FILED

2019 Mar-04  PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL J. VIGNEULLE, as** | ) | |
| **Personal Representative for the** | ) | |
| **Estate of Andrew Michael** | ) | |
| **Vigneulle,** | ) | |
| | ) | **CASE NO.  2:15-cv-2268-SLB** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TAHSIN INDUSTRIAL CORP.,** | ) | |
| **USA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

COURT'S INSTRUCTIONS TO THE JURY

**MEMBERS OF THE JURY**:

Now that you have heard all of the evidence, it becomes my duty to give you the

instructions of the court concerning the law applicable to this case.

In any jury trial there are in effect two judges.  I am one of the judges.  It is my duty to

preside over the trial and to determine what testimony and law is relevant under the law for your

consideration.  It is also my duty at the end of the trial to instruct you on the law applicable to the

case.  You jurors are the other judge.  You judge the facts.  But in determining what actually

happened in this case -- that is, in reaching your decision as to the facts -- it is your sworn duty to

follow the law I am now in the process of defining for you.

It is your duty as jurors to follow the law I state to you, and to apply that law to the facts

as you find them from the evidence in the case.

You are not to single out one instruction alone as stating the law, but must consider the

instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be

a violation of your sworn duty to base a verdict upon any view of the law other than that given in

the instructions of the court, just as it would also be a violation of your sworn duty, as judges of

the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case you must not be swayed by bias or prejudice or sympathy

or favor as to any party.

Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion.

Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the court, and reach a just verdict regardless of the consequences.  That was the oath you took as you were seated as a juror, and the parties have the right to expect nothing less.

This case should be considered and decided by you as a lawsuit between persons of equal standing in the community, and holding the same or similar stations in life.

A corporation is entitled to the same fair trial at your hands as is a private individual, and a private individual is entitled to the same fair trial at your hands as is a corporation.

All persons and corporations stand equal before the law, and are to be dealt with as equals in a court of justice.

When a corporation is involved, of course, it may act only through natural persons as its agents or employees; and, in general, any agent or employee of a corporation may bind the corporation by his acts and declarations made while acting within the scope of his authority

delegated to him by the corporation, or within the scope of his duties as an employee of the corporation.

As stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence admitted in the case.  That evidence may be direct evidence or indirect evidence, sometimes referred to as circumstantial evidence.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

Direct evidence is direct proof of a fact, such as testimony of an eyewitness.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.

The term "evidence" includes the sworn testimony of the witnesses including depositions received in evidence, sworn answers to interrogatories, and the exhibits admitted in the record.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case.

The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice.

In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case.

What the lawyers say is not binding upon you.

During the course of a trial, I occasionally make comments to the lawyers, or ask questions of a witness, or admonish a witness concerning the manner in which he or she should respond to the questions of counsel.

Do **not** assume from anything I may have said or done that I have any opinion concerning any of the issues in this case.

Except for my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your own findings  as to the facts.

Although you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

Now, I have said that you must <u>consider</u> all of the evidence. This does not mean, however, that you must <u>accept</u> all of the evidence as true or accurate.  You may accept or reject the testimony of any witness in whole or in part.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the testimony and exhibits.

In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions:

Did the person impress you as one who was telling the truth?

Did the witness have any particular reason not to tell the truth?

Did he or she have a personal interest in the outcome of the case?

Did the witness seem to have a good memory?

Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

Did he or she appear to understand the questions clearly and answer them directly?

Has the witness said or done something in the past that is inconsistent with his or her testimony?

Did the witness's testimony differ from the testimony of other witnesses?

These are some of the considerations that will help you determine the accuracy or truthfulness of what each witness said.

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave before you during the trial.

A witness may be discredited or "impeached" by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.

If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an import fact or with only an unimportant detail.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more

8

persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or non-existence of any fact.

You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

The rules of evidence provide that if scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may while testifying state his opinion concerning such matters.

You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves.

If you should decide that the opinion of an expert witness is <u>not</u> based upon sufficient education and experience, or upon a sufficient understanding of the relevant facts, or if you should conclude that the reasons given in support of the opinion are <u>not</u> sound, or that the opinion is outweighed by other evidence or that any basic hypothesis upon which the opinion is based has <u>not</u> been proven to be substantially true, then you may disregard the opinion entirely.

A party who asserts a claim against another person has the burden of proof.

The burden is to satisfy the jury by a preponderance of the evidence as to each element of the claim or defense.

A preponderance of the evidence means such evidence, when considered and compared with evidence opposed to it, has more convincing force, and produces in your minds a belief, that what is sought to be proved is more likely true than not true.

In the final analysis, to establish by a "preponderance of the evidence" merely means that the thing sought to be proven is more likely so than not so.

In determining whether any fact in issue has been proved by a preponderance of the evidence, the jury may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may produced them.

If a preponderance of the evidence does not support each essential element of a claim, then the jury should find against the party having the burden of proof as to that claim.

In this case plaintiff has the burden of proof on his Alabama Extended Manufacturers Liability (AEMLD) claim.  Defendant has the burden of proof on its claims of product misuse and contributory negligence.

The fact that the Plaintiff has filed a complaint against Tahsin is not proof of anything, and raises no inference that Tahsin is responsible in damages to the Plaintiff.  The Plaintiff must prove by a preponderance of the evidence each element of his claim.  If the Plaintiff proves his claim, you must then determine whether defendant has proved either of its affirmative defenses.  If plaintiff proves

his claim and defendant does not prove its affirmative defenses, you must consider

whether to award damages.

Plaintiff's Claim

Plaintiff Michael Vigneulle, as personal representative of the Estate of Andrew Michael Vigneulle, makes a claim under the Alabama Extended Manufacturer's Liability Doctrine or "AEMLD."

The fact that an accident or injury occurred is not in itself sufficient to establish liability under the AEMLD.  To prevail in a products liability case under the Alabama Extended Manufacturer Liability Doctrine ("AEMLD"), the plaintiff has the burden of establishing evidence to demonstrate a defect in the product. The AEMLD provides that a manufacturer is responsible for designing and manufacturing a product that is reasonably safe for its intended purposes and uses.

To establish liability under the AEMLD, a plaintiff must establish that he suffered injury or damage caused by a product in a defective condition that is unreasonably dangerous to the ultimate user or consumer of said product when the

product was without substantial change in the condition in which it was sold to the user or consumer.

The AEMLD claim is a design defect claim based on the lack of an attached, double-footed suspension relief device (SRD).  The sole claim in this case is that the SRD that was provided with the subject safety harness Mr. Vigneulle was using at the time of the accident was defectively designed.  There are no claims in this case of inadequate testing or failure to warn.

Plaintiff contends that the full body safety harness was defective as designed.  To recover damages on this claim, the plaintiff must prove by a preponderance of the evidence all of the following elements:

1.  Tahsin was a manufacturer, supplier, distributor, and/or seller of the full body safety harness;

2.  Tahsin did manufacture, supply, distribute, and/or sell the full body safety harness;

3.  The full body safety harness was defective;

14

4.     There was no substantial change to the full body safety harness from the time it left the possession of Tahsin until it reached Drew Vigneulle;

5.     Drew Vigneulle's death was caused by the defect in the full body safety harness; and

6.     There was a safer and practical alternative design that Tahsin could have used at the time the full body safety harness was manufactured.

Defendant Tahsin denies that the plaintiff's claim is true and contends that plaintiff has not proven elements 3, 5, and 6 above by a preponderance of the evidence.

Defective means unreasonably dangerous.  Unreasonably dangerous means that a product must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

The fact that Drew Vigneulle died while using the full body safety harness does not establish the presence of defect, or, stated differently, it does not establish

the fact that the full body safety harness was unreasonably dangerous when put to its intended use.

Michael Vigneulle must prove to your reasonable satisfaction that Tahsin could have used a safer and practical alternative design at the time the full body safety harness was made.

The plaintiff must put forth evidence that some alternative design existed that would have eliminated or reduced Drew Vigneulle's injuries. A safer alternative design is one that would have reduced or eliminated the harm to Drew Vigneulle. The alternative design must be of greater overall safety than the design used by Tahsin.

To decide if Michael Vigneulle has proven a practical alternative design, you may consider the intended use of the full body safety harness, its styling, cost, desirability, safety features and other relevant factors. You may also consider the

16

particular event, the likelihood of injury, and the probable seriousness of injury if that event occurred, the obviousness of the alleged defect, and Tahsin's ability to eliminate the alleged defect.

Proving that a proposed alternative design exists is not enough under the law if that proposed alternative design would actually create more dangers than the design actually used.

A product manufacturer like Tahsin is required to manufacture and design a product that is not unreasonably dangerous.  A product manufacturer like Tahsin is not an insurer against all harm which might be caused by the use of its products – here, a full body safety harness.  A manufacturer is not obligated to produce a product that is accident-proof or injury-proof.

If you find that the full body harness was defectively designed, you must also decide whether Drew Vigneulle's death was caused by the design defect in the defendant's full body safety harness.

The design defect caused the harm if (1) the design defect naturally and probably brought about Drew Vigneulle's death and (2) his death would not have happened without the design defect.

For the plaintiff to meet this burden the plaintiff must prove by a preponderance of the evidence that Drew Vigneulle's death would not have occurred but for the design defect.

The mere possibility that the death in question was caused or contributed to by a defect in the design of the product is not sufficient to return a verdict in favor of the Plaintiff in this case.

18

Tahsin's Affirmative Defenses

Defendant, Tahsin, contends that the Plaintiff is not entitled to recover in this case because of the following affirmative defenses:

(1)    Contributory negligence; and

(2)    Product misuse.

The burden is upon Tahsin to satisfy you by a preponderance of the evidence of the truthfulness of these defenses.

Defendant Tahsin says that Drew Vigneulle was himself negligent in the use of the full body safety harness and that his negligence was a cause of his death.

In order to prove that Drew Vigneulle was himself negligent and that his negligence was a cause of his death, Tahsin must prove by a preponderance of the evidence that Drew Vigneulle failed to do what a reasonably prudent person would have done in the use of the full body safety harness in a similar situation, or that

Drew Vigneulle did something in the use of the full body safety harness which a

reasonably prudent person would not have done in a similar situation, and that this

negligence contributed to his death.

If the conduct of Drew Vigneulle was negligent in the use of his full body

safety harness and this negligence contributed to his death, the Plaintiff cannot

recover on his claims against Tahsin under the Alabama Extended Manufacturers'

Liability Doctrine.  Stated differently, contributory negligence is a complete

defense to plaintiff's claim under the AEMLD.

Tahsin also says that the full body safety harness was misused.  Tahsin must

prove by a preponderance of the evidence that the full body safety harness was

used in a way that was not intended or not reasonably foreseeable by Tahsin and

that this misuse caused Drew Vigneulle's death.

If after consideration of all of the evidence in this case, you are not satisfied by a preponderance of the evidence that plaintiff Michael Vigneulle, as personal representative of the Estate of Andrew Michael Vigneulle, proven his claim, your verdict should be for the defendant, Tahsin.  In this event you would go no further. This would end your deliberations.

If you find that defendant has proven its defenses of product misuse or contributory negligence, your verdict should be for the defendant.

On the other hand, if after consideration of all the evidence in the case you are satisfied by a preponderance of the evidence that Tahsin's full body safety harness was defective, that Drew Vigneulle's death was caused by the defect, that a safe and practical design could have been used at the time the harness was manufactured, and that defendant has not established its defenses, then your verdict should be for the plaintiff.  In this event it will be necessary for you to

arrive at an amount to be awarded in damages.  I will now give you the following

rules of law to assist you in your deliberations in arriving at an amount in the

event you find for Mr. Vigneulle, as personal representative of the Estate of

Andrew Michael Vigneulle.

In a suit brought for a wrongful act causing death, the damages recoverable

are entirely punitive and not compensatory.  The purposes of punitive damages are

to preserve human life, to punish a defendant for its wrongful conduct, and to

deter or discourage defendant and others from committing the same or similar

wrongs.  The amount of damages should be directly related to the amount of

wrongdoing on the part of the defendant.

In determining the amount of damages you are not to consider the monetary

value of Drew Vigneulle's life.  Damages in a wrongful death case are not

recoverable to compensate the family of Drew Vigneulle from a financial or

pecuniary standpoint on account of his death.  You do not consider the monetary

value of Drew Vigneulle's life because the damages are not to compensate

Michael Vigneulle or Drew Vigneulle's family from a monetary standpoint

because of his death.

Any award of damages should not be based on sympathy, prejudice, passion

or bias, but based on the culpability of the defendant, and by that I mean how bad

defendant's wrongful conduct was.

It would be improper, in arriving at your verdict, for you to agree to be

bound beforehand, for each juror to assess the damages separately, total the twelve

separate figures, then divide the total by twelve to arrive at your verdict. This is

known as a quotient verdict and it is illegal.

Your verdict must not be based on mere speculation, conjecture, guesswork or surmise but must be based upon the evidence and just and reasonable inferences drawn from that evidence.

The amount you award is within your discretion based on the evidence and the guidelines in this instruction.

Of course, the fact that I have given you instructions concerning the issue of damages should not be interpreted in any way as an indication that I believe this is a case where an award of damages is appropriate.

The damage instruction has been given so that you may have a complete instruction of law.

A verdict form has been prepared for your convenience. The verdict form contains a number of questions.

[Explain Verdict Form]

You will take the verdict form to the jury room and when you have reached unanimous agreement as to the question or questions on your verdict form, you will have your foreperson fill it in, date and sign the form, and then return to the courtroom.

If, during your deliberations, you should desire to communicate with the court, please reduce your message or question to writing signed by the foreperson, and pass the note to my courtroom deputy who will bring it to my attention.

I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.

I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division at the time.

Your verdict must represent the considered judgment of each juror.

In order to return a verdict, it is necessary that each juror agree thereto.

In other words, your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.

Each of you must decide the case for yourself, but only after an impartial consideration of all the evidence in the case with your fellow jurors.

In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous.

But do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times you are not partisans.

You are judges -- judges of the facts.

Your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room you should first select one of your number to act as your foreperson who will preside over your deliberations and will speak for you here in court.

It is proper to add a final caution.

Nothing that I have said in these instructions -- and nothing that I have said or done during the trial -- has been said or done to suggest to you what I think your verdict should be.

What the verdict shall be is your exclusive duty and responsibility.